UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:19-CR-00019-1-JRG-CRW |
| | ) | |
| RHONDA BELCHER | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Rhonda Belcher's Renewed Pro Se Motion for Compassionate Release [Doc. 91], the United States' Response [Doc. 93], and Ms. Belcher's Reply [Doc. 94]. For the reasons herein, the Court will deny Ms. Belcher's motion.

### I. BACKGROUND

Last year, Ms. Belcher pleaded guilty to conspiring to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A). [Plea Agreement, Doc. 30, at 1; Minute Entry, Doc. 32]. The Court sentenced her to a below-guidelines sentence of 110 months' imprisonment. [J., Doc. 57, at 2; Statement of Reasons, Doc. 58, at 2]. Earlier this year, Ms. Belcher, acting pro se, moved the Court for compassionate release under 18 U.S.C. § 3582(c)(1)(A) due to the COVID-19 pandemic, citing various underlying medical conditions, including obesity. [Def.'s First Mot., Doc. 78, at 2]. The Court denied her motion because FPC Alderson, the facility where she is incarcerated, had no known cases of COVID-19 at the time. [Mem. Op. & Order, Doc. 90, at 1–2]. The Court, however, granted her leave to renew her motion if the conditions at FPC Alderson were to change.

Ms. Belcher has now filed a renewed motion, in which she states that "there is at least one positive case of COVID-19 from an inmate who transferred to FPC-Alderson on September 21, 2020." [Def.'s Renewed Mot. at 1–2]. According to Ms. Belcher, "FPC Alderson is ill-

equipped on every level to protect her now." [*Id.* at 2]. The United States opposes Ms. Belcher's motion, maintaining that her release would be inconsistent with USSG § 1B1.13 and 18 U.S.C. § 3553(a). [United States' Resp. at 7–14]. Having carefully considered the parties' arguments, the Court is now prepared to rule on Ms. Belcher's renewed motion.

## II. ANALYSIS

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). Although § 3582(c)(1)(A) begins with the declaration that "[t]he court may not modify a term of imprisonment once it has been imposed," Congress enacted the First Step Act, Pub. L. No. 115-319, 132 Stat. 5194 (2018), which amended § 3582(c)(1)(A) so that courts can consider motions for compassionate release once a defendant either exhausts her administrative remedies with the Bureau of Prisons or waits thirty days after submitting a request to the warden. Section § 3582(c)(1)(A) now states:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

2

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). The United States previously acknowledged that "[t]he Court has authority to consider Belcher's motion because 30 days have passed since the warden of her facility received her request for a reduction of sentence." [United States' First Resp., Doc. 80, at 1].

Under § 3582(c)(1)(A), compassionate release is "discretionary, not mandatory," *United States v. Jones*, ___ F.3d ___, 2020 WL 6817488, at *5 (6th Cir. Nov. 20, 2020) (citation omitted), and the statute contains three substantive requirements that the Court must address in sequential order before it can grant compassionate release, *id.*; *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). First, the Court must determine that "extraordinary and compelling reasons warrant" a sentence reduction. *Ruffin*, 978 F.3d at 1004 (quoting § 3582(c)(1)(A)(i)). Second, the Court must determine that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (quoting § 3582(c)(1)(A)). And third, the Court must consider any applicable factors under § 3553(a) "and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Jones*, 2020 WL 6817488 at *5 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010))).

3

## A. The First Requirement: Extraordinary and Compelling Circumstances

When determining whether an inmate, in requesting compassionate release, has identified reasons that are extraordinary and compelling in nature, "courts have universally turned to USSG § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." *United States v. Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *3 (E.D. Tenn. Apr. 15, 2020) (quotation omitted). Section 1B1.13 states:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
>
> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

USSG § 1B1.13(1)–(3).

Although § 1B1.13 does not define "extraordinary and compelling reasons," the guideline commentary's first application note lists four "circumstances" in which "extraordinary and compelling reasons" are present:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a

4

specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

>    (ii) The defendant is—
>
>>    (I) suffering from a serious physical or medical condition,
>>    (II) suffering from a serious functional or cognitive impairment, or
>>    (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

>    (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
>    (C) Family Circumstances.—
>
>>    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
>    (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

USSG § 1B1.13 cmt. n.1(A)–(D). In these provisions, "Application Note 1 identifies three specific extraordinary and compelling reasons (tied to the defendant's health, age, or family circumstances) and a fourth catchall," *Ruffin*, 978 F.3d at 1005 (citing *id.*), under which the Bureau of Prison's director has license to grant release for "reason[s] other than" the three reasons in Application Note 1(A)–(C), USSG § 1B1.13 cmt. n.1(D).

But the First Step Act "allow[s] defendants," for the first time, "to file reduction-of-sentence motions when the Bureau refuse[s] to do so," *Ruffin*, 978 F.3d at 1004, and district courts, when considering these motions and determining whether extraordinary and compelling

5

circumstances exist for an inmate's release, now have authority to consider "reason[s] other than" the three reasons in Application Note 1(A)–(C). *See Jones*, 2020 WL 6817488 at *8 (stating that "the as-written catch-all provision," which "still refers to the Director of the BOP as the absolute arbiter of 'extraordinary and compelling,'" "contravenes Congress's motivation for reforming compassionate release in the First Step Act and ignores the Sentencing Commission's grounds for augmenting § 1B1.13's application notes"); *compare Ruffin*, 978 F.3d at 1006, 1008 (declining to decide whether, "after the First Step Act, district courts may find additional extraordinary and compelling reasons other than those in [§ 1B1.13's] commentary (such as a once-in-a-century pandemic)," or whether, instead, "Application Note 1's reasons remain exclusive and that the note's catchall delegates to the Bureau of Prisons (not the courts) the task of identifying other reasons"), *with Jones*, 2020 WL 6817488 at *1, 7, 9 ("We resolve a debate that we first teed up in *Ruffin*, holding that" district courts, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act," have "full discretion to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (footnote omitted)).

The district courts' authority to eschew Application Note 1(A)–(C) comes from the Sixth Circuit's recent decision in *Jones*, in which the Sixth Circuit observed that the Sentencing Commission has not updated § 1B1.13 in response to the First Step Act and that § 1B1.13, in its current form, therefore cannot serve as an applicable policy statement under § 3582(c)(1)(A). *Jones*, 2020 WL 6817488 at *1, 7; *compare* 18 U.S.C. § 3582(c)(1)(A) (providing that district courts must conclude that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission"), *with Jones*, 2020 WL 6817488 at *1, 7 (holding that § 1B1.13 is "not an 'applicable' policy statement in cases where incarcerated persons file their own motions in district court for compassionate release" because "the Commission has not

6

updated § 1B1.13 since the First Step Act's passage in December 2018" (citation omitted)). In deciding *Jones*, however, the Sixth Circuit did not appear altogether to forbid district courts from looking to § 1B1.13—that is, to the "three specific extraordinary and compelling reasons" in Application Note 1(A)–(C), *Ruffin*, 978 F.3d at 1005 (citing USSG § 1B1.13 cmt. n.1(A)–(D))—with an eye toward guidance, rather than with an eye toward deference. *See Jones*, 2020 WL 6817488 at *8, 9 (stating that § 1B1.13 "does not *wholly* survive the First Step Act's promulgation" and expressing an intention of "preserving as much of § 1B1.13 that can be saved" (emphasis added)); *see also id.* at *9 (stating that "federal judges *may* skip" an analysis under § 1B1.13 and have "full discretion" in choosing whether "to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (emphasis added) (footnote omitted))); *United States v. Carr*, No. 20-5784, at 3 (6th Cir. Oct. 26, 2020) (PACER) (ruling that "the district court did not err by considering the Sentencing Commission's statement defining 'extraordinary and compelling reasons' when deciding whether [the defendant's] circumstances warranted compassionate release" because the district court merely "treated the policy statement as 'helpful guidance'" (quotation and citation omitted)).

In Ms. Belcher's case, the United States, relying on the Center for Disease Control's Guidelines, previously conceded that Ms. Belcher's body mass index of 38.1 places her at a heightened risk of severe illness if she were to contract COVID-19 and is an extraordinary and compelling reason for her release. *See* [United States' Third Resp., Doc. 89, at 2 ("This Court should thus find that Belcher's obesity constitutes an extraordinary and compelling reason for release in light of the current pandemic.")]. The Court therefore finds that Ms. Belcher has identified an extraordinary and compelling reason for her release. But even so, before the Court can conclude that Ms. Belcher is entitled to compassionate release, it must address the additional

7

substantive requirements under § 3582(c)(1)(A), including § 3553(a)'s factors. *Jones*, 2020 WL 6817488 at *5; *see Ruffin*, 978 F.3d at 1008 ("We have repeatedly recognized that district courts may deny relief under the § 3553(a) factors even if 'extraordinary and compelling' reasons would otherwise justify relief." (citations omitted)).

In addressing these additional requirements, the Court will exercise its discretion to skip an analysis under § 1B1.13 in favor of an analysis under § 3553(a)'s factors. *See Jones*, 2020 WL 6817488 at *7, 9 (holding that § 1B 1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release" and stating that district courts, therefore, "may skip step two of the § 3582(c)(1)(A) inquiry"); *United States v. Lamar*, No. 18-20183, 2020 WL 7319431, at *4 (E.D. Mich. Dec. 10, 2020) ("The government . . . point[s] to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. That argument is a dead letter after the Sixth Circuit's decision in *Jones* . . . . That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. (quoting 18 U.S.C. § 3553(a)(2)(C))).

### B. The Third Requirement: Applicable Factors under § 3553(a)

The Court considered § 3553(a)'s factors "in some depth at the original sentencing," *United States v. Curry*, 606 F.3d 323, 331 (6th Cir. 2010), so it has no obligation to readdress all of those factors now, *see* 18 U.S.C. § 3582(c)(1)(A) (requiring district courts to consider § 3553(a)'s factors "to the extent that they are applicable"); *United States v. Jones*, 407 F. App'x 22, 25 (6th Cir. 2011) (stating that in *Curry* "we held that the district court did not abuse its discretion even though it had not expressly considered all of the § 3553(a) factors" because "§ 3582(c)(2) proceedings 'do not constitute a full resentencing of the defendant' and

8

do not require the same procedural formalities as plenary sentencings" (quoting *Curry*, 606 F.3d at 330–31)); *see also Jones*, 2020 WL 6817488 at *11 ("District courts should consider all *relevant* § 3553(a) factors before rendering a compassionate release decision." (emphasis added) (citing *Gall v. United States*, 552 U.S. 38, 49–50 (2007))). "[A]s long as the record *as a whole* demonstrates that the pertinent factors were taken into account," the Court's analysis is sufficient. *Jones*, 2020 WL 6817488 at *11 (quotation omitted).

In Ms. Belcher's case, the relevant factors that the Court will address include § 3553(a)(1), (2), (4), and (6):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> >
> > . . . .
>
> (4) the kinds of sentence and the sentencing range established for—
>
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
> >
> > . . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct

18 U.S.C. § 3553(a)(1)–(2), (4), (6).

As for the nature and circumstances of Ms. Belcher's offense, Ms. Belcher conspired to distribute at least fifty grams of methamphetamine—a serious offense. *See United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("To be sure, drug trafficking is a serious offense

9

that, in itself, poses a danger to the community." (citations omitted)); *see generally United States v. Layne*, 324 F.3d 464, 468 (6th Cir. 2003) (observing that methamphetamine "poses serious dangers to . . . human life" (quotation omitted)). Along similar lines, the Court has refamiliarized itself with Ms. Belcher's presentence investigation report and her history and characteristics, and the Court is of the conviction that she would present a danger to the public if it were to order her release.

Ms. Belcher admittedly conspired to distribute a large quantity of methamphetamine—between fifty and a hundred fifty grams—in the Eastern District of Tennessee. [Plea Agreement at 3; PSR, Doc. 37, ¶ 13];[1] *cf. United States v. Castro*, 960 F.3d 857, 865 (6th Cir. 2020) (stating that a hundred grams of heroin is a "large quantit[y] of drugs"); *United States v. Farmer*, No. 95-6637, 1996 WL 694147, at *4 (6th Cir. Dec. 3, 1996) (describing a hundred and fifty grams of cocaine base as "a large quantity of narcotics"). At sentencing, her criminal history category was VI, the highest possible category—with thirteen countable points for convictions that include forgery, theft, resisting arrest, possession of drugs, shoplifting, criminal impersonation, and joyriding. [PSR ¶¶ 34, 37–44].

To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, "courts have generally granted compassionate release only to defendants who have served a significant portion of their sentences." *United States v. Kincaid*, No. 3:10-CR-00160-1-TAV-HBG, at 13 (E.D. Tenn. Oct. 29, 2019) (citations omitted) (PACER), *aff'd*, 802 F. App'x 187 (6th Cir. 2020). Ms. Belcher has served only a fraction—less than a

---

[1] As a general matter, when a defendant does not "produce some evidence that calls the reliability or correctness of the alleged facts [in the PSR] into question," a district court "may rely entirely on the PSR." *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (quotation omitted); *see United States v. Roark*, 403 F. App'x 1, 4 n.2 (6th Cir. 2010) ("[T]he PSR *is* evidence, at least in the sense that it may be considered at sentencing." (citing *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992))).

10

third—of her sentence, and her release would therefore result in a substantial reduction in her sentence. *See Kincaid*, 802 F. App'x at 188 ("[T]he need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). A substantial reduction in Ms. Belcher's sentence simply would not reflect the seriousness of her offense, promote respect for the law or afford adequate deterrence, or adequately protect the public from future crimes. 18 U.S.C. § 3553(a)(2). And if the Court were to grant a substantial reduction in her sentence by ordering her release, it would also risk creating "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(6); *United States v. Garmany*, No. 3:18-CR-89-PLR-DCP-2, 2020 WL 4923956, at *3 (E.D. Tenn. Aug. 21, 2020) ("Defendant has served approximately 16 months of her 60 months sentence. Granting compassionate release to a defendant who has served such a small portion of her sentence would fail to reflect the seriousness of her offense, promote respect for the law, and provide just punishment for the offense." (citing 18 U.S.C. § 3553(a)(2)(A))).

Lastly, the Court would be remiss if it did not consider COVID-19's impact on FPC Alderson and the threat that COVID-19 currently poses to Ms. Belcher as a high-risk inmate—a consideration that is relevant to § 3553(a)(2)(D). *Jones*, 2020 WL 6817488 at *12. An inmate's compassionate release is an extraordinary and rare occurrence, *see United States v. Dusenbery*, No. 5:91-cr-291, 2019 WL 6111418, at *2 (N.D. Ohio Nov. 18, 2019) ("Compassionate release due to a medical condition is an extraordinary and rare event." (quotation omitted)), and the general threat of COVID-19—that is, the fear that it may infiltrate a prison's population—cannot justify it, *see United States v. Bothra*, No. 20-1364, 2020 WL 2611545, at *2 (6th Cir. May 21,

11

2020) (observing that courts have "been reluctant to find that generalized fears of contracting COVID-19, without more, constitute a compelling reason" (citations omitted)); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"); *United States v. Smoot*, No. 2:19-CR-20, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020) ("The mere possibility of an outbreak at his facility does not equate to a compelling enough reason to justify [the defendant's] release." (citation omitted)).

Contrary to Ms. Belcher's assertion otherwise, the conditions at FPC Alderson have not changed in any significant way since the filing of her prior motion for compassionate release. FPC Alderson remains relatively unaffected by COVID-19, especially in comparison to other federal facilities throughout the country. The Federal Bureau of Prisons ("BOP") reports only one active case among the inmates at FPC Alderson and only three active cases among the staff. *COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated Dec. 17, 2020). In juxtaposition to these figures, Ms. Belcher's allegation that "FPC Alderson is ill-equipped on every level to protect her now" has no traction under § 3582(c)(1)(A). *See Carr*, No. 20-5784 at 4 ("[The defendant's] allegations involving the BOP's failure to respond adequately to the risks posed by Covid-19 are the sort of 'generalized fears' that courts have found do not constitute extraordinary and compelling reasons for compassionate release." (citations omitted)).

Under these circumstances, Ms. Belcher is not entitled to compassionate release. *Cf. United States v. You*, No. 20-5390, at 2 (6th Cir. Apr. 22, 2020) (PACER) (noting the scarcity of "COVID-19 cases at [the defendant's] present facility" and observing that "her facility has implemented precautionary measures to protect those detained in the facility"); *see Raia*, 954

12

F.3d at 597 (referring to the BOP's "extensive and professional efforts to curtail the virus's spread" (citation omitted)); *United States v. Elebesunu,* No. GJH-13-008, 2020 WL 3791978, at *2 (D. Md. July 7, 2020) ("Under circumstances such as these where the number of cases at the facility is low and BOP appears to have controlled the spread, the imminence of the risk to [the defendant] is diminished and weighs against granting compassionate release." (citation omitted)); *United States v. Arafat*, No. 12-cr-45, 2020 WL 3790727, at *6 (D. Minn. July 7, 2020) ("[E]ven assuming [the defendant's] underlying medical conditions exist, [he] has failed to demonstrate a particularized risk of contracting the disease. To date, FCI-Sandstone has only one reported case of COVID- 19." (citation omitted)).

### III. CONCLUSION

While the Court sympathizes with Ms. Belcher's concerns, she is not entitled to compassionate release under § 3582(c)(1)(A) because the relevant factors under § 3553(a) militate against her release. Ms. Belcher's Renewed Pro Se Motion for Compassionate Release [Doc. 91] is therefore **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
